UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAURENCE V.,

                   Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.

Case No. C19-378-MLP

ORDER

## I.     INTRODUCTION

Plaintiff seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in weighing the medical evidence opinion, formulating Plaintiff's residual functional capacity ("RFC"), and relying on vocational expert ("VE") testimony. (Dkt. # 16 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1960, has the equivalent of a high school education, and has worked as a transmission rebuilder. AR at 449, 537, 550, 561. Plaintiff was last gainfully employed in 2010. *Id.* at 537.

Plaintiff previously applied for disability benefits in 2011, alleging an onset date of October 28, 2011. AR at 275-92. On April 18, 2013, an ALJ found Plaintiff not disabled and Plaintiff's request for review by the Appeals Council was denied. *Id.* Plaintiff submitted the instant applications for disability insurance benefits, alleging disability as of April 19, 2013. *Id.* at 436, 449-50, 457-77. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 376-77, 379-80. After the ALJ conducted a hearing on November 30, 2016, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 66-82.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

Step two: Plaintiff has the following severe impairments: coronary artery disease, left ventricular thrombosis, degenerative disc disease, depression, anxiety, and substance abuse (20 CFR 404.1520(c) and 416.920(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Since April 19, 2013, Plaintiff can perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with limitations. He can occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; unlimitedly balance, stoop, and kneel; frequently crouch; occasionally crawl; he would need to avoid concentrated exposure to extreme cold; is able to work in two hour intervals; is able to complete given tasks by the end of a normal workday; however, requires work that allows for a variable pace; and is able to work in a low stress environment defined as occasional changes in workplace setting.

Step four: Since April 19, 2013, Plaintiff has been unable to perform past relevant work.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

> Step five: Prior to February 23, 2015, the date Plaintiff's age category changed, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Plaintiff therefore was not disabled before February 23, 2015. Beginning February 23, 2015, Plaintiff was disabled by direct application of Medical-Vocational Rule 202.06.

*Id.* at 66-82.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 14-17. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 16.)

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

ORDER - 3

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social

Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 1. The ALJ's Medical Evidence Summary

Before evaluating the medical opinion evidence, the ALJ gave a detailed summary of Plaintiff's impairments. AR at 74-77. With regard to Plaintiff's spine condition, the ALJ found Plaintiff received relatively conservative treatment and that objective findings in the record were indicative of generally intact physical functioning. *Id.* at 74. The ALJ found that examinations found tenderness, spasms, and reduced range of motion in Plaintiff's spine, but there were no substantial neurological issues or the need for invasive treatments. *Id.* (citing *id.* at 633-49). The ALJ also noted Plaintiff's chiropractic treatment improved his condition. *Id.* (citing *id.* at 650-71). The ALJ further noted the records did not indicate any noteworthy gait or motor strength deficits. *Id.* (citing *id.* at 620, 691-702, 825, 1309, 1384, 1408, 1415, 1531). The ALJ concluded that although abnormalities were documented, Plaintiff's spinal condition was not suggestive of substantial limitations and that the RFC accommodated his spinal conditions. *Id.* at 75.

With regard to Plaintiff's cardiovascular conditions, the ALJ found Plaintiff did have a history of coronary artery disease with prior myocardial infarction and thrombosis, but that it did not appear Plaintiff was significantly limited in his functioning for any extended period of time. AR at 75. The ALJ cited to x-ray results dated near Plaintiff's alleged onset date which showed Plaintiff's heart was within normal limits with mild pulmonary edema. *Id.* (citing *id.* at 926). The ALJ found that Plaintiff did not experience any noteworthy cardiac events for nearly a year after

his alleged onset date. *Id.* (citing *id.* at 1248, 1464). The ALJ acknowledged that in May 2014 Plaintiff had complaints of syncope (loss of consciousness caused by cerebral hypoperfusion) and underwent catheterization, but testing showed no significant abnormalities, only a mild single vessel disease, and that his pulmonary edema has essentially resolved. *Id.* (citing *id.* at 738, 741-42, 915-16). Similarly, the ALJ acknowledged that Plaintiff had a myocardial infarction in November 2014. *Id.* at 75. However, later that month Plaintiff was assessed as doing well with no chest pains or other abnormalities. *Id.* (citing *id.* at 771). The ALJ concluded that the treatment records reflect that Plaintiff recovered from his myocardial infarction and that he was never extremely limited by his condition for an extended period of time. *Id.* As such, the ALJ found the RFC adequately accommodated for his cardiovascular conditions.[3] *Id.*

### 2. *State Agency Non-Examining Consultants*

Plaintiff disagrees with the ALJ's decision to give great weight to the opinions of State agency non-examining consultants rather than to Plaintiff's treating providers. (Dkt. # 16 at 3.) Plaintiff asserts this was harmful error because the State agency non-examining consultants did not examine Plaintiff or review medical records submitted subsequent to their medical review. (*Id.* at 5.)

Although the State agency non-examining consultants did not review all of the records in this case, the ALJ had the opportunity to review the entire record and determined that their opinions regarding Plaintiff's RFC were consistent with the longitudinal record. AR at 77-78.

---

[3] The ALJ also found that treatment records dated after his date last insured showed he maintained normal functioning. *Id.* (citing, *inter alia*, *id.* at 1297 (noting that in December 2014 was generally good other than his thrombosis), 1464 (noting in June 2015 Plaintiff was assessed as improved)). The Court notes some of these records also report that Plaintiff was experiencing episodes of chest pain, which the ALJ failed to mention. *Id.* However, any err in the ALJ's characterization of these records is harmless as these records are dated either after Plaintiff's date last insured, or after Plaintiff had obtained advanced age and was deemed disabled. *See Carmickle v. Commissioner of Social Security Administration,* 533 F.3d 1155, 1162-63 (9th Cir. 2008).

Further, non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. §§ 404.1513a(b)(1), 416.913(b)(1). Although Plaintiff may believe the ALJ should have afforded their opinions less weight, it is the role of the ALJ to resolve conflicts in the medical opinion evidence. Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's that will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (when the evidence is susceptible to more than one interpretation, the Commissioner's interpretation must be upheld if rational). Accordingly, Plaintiff has not shown that the ALJ erred in affording great weight to the opinions of the State agency non-examining consultants.

        3.       *Ginger Evans, M.D.*

Dr. Evans, Plaintiff's treating physician, completed a cardiac impairment questionnaire and a letter in April 2015. AR at 1242-47. Dr. Evans noted Plaintiff suffered from chest pain that was precipitated by emotional stress and physical exertion. *Id.* at 1243. She estimated that in an eight-hour workday, Plaintiff could sit for four hours and stand and/or walk for less than one hour. *Id.* at 1244. Dr. Evans also opined Plaintiff could occasional lift and carry up to twenty pounds. *Id.* She opined Plaintiff would need to take unscheduled breaks one to four times per day and that he would be absent from work more than three times a month as a result of his impairments. *Id.* at 1246. She concluded Plaintiff's symptoms would preclude him from functioning in a competitive work environment. *Id.* at 1247.

The ALJ assigned Dr. Evans' opinion little weight. AR at 78. Specifically, the ALJ found Dr. Evans' opinion was highly inconsistent with the record, as the ALJ summarized and discussed earlier in the decision. The ALJ found Dr. Evans' opinion of such extreme limitations

was inconsistent with the lack of documented significant motor strength, gait, or sensation issues. *Id.* The ALJ also found that although Plaintiff did experience a myocardial infarction, the record showed a general absence of significant cardiovascular abnormalities, and that the record did not show frequent documentation of objective findings consistent with the severity of symptoms opined by Dr. Evans. *Id.* Lastly, the ALJ found Dr. Evans provided little support for her opinion other than Plaintiff's cardiovascular history. *Id.*

Plaintiff argues the ALJ erred in evaluating Dr. Evans' opinion, because although the ALJ provided string cites to exhibits that he found conflicted with Dr. Evans' opinion, he did not provide an explanation as to how they conflicted or why his interpretation of the evidence was correct rather than Dr. Evans' opinion. (Dkt. # 16 at 6.) Plaintiff's argument is misplaced. The ALJ found Dr. Evans' opinion inconsistent with the record and specifically referenced his summary of the inconsistencies earlier in the decision which detailed his interpretation of the medical evidence. *Id.* at 78. While the ALJ could have been more specific with his citation to the record in his evaluation of the medical opinion evidence, his earlier summary provided numerous pin cites and failing to repeat those pin cites does not constitute error. Because the ALJ's interpretation of the evidence was rational, it must be upheld. *Burch*, 400 F.3d at 680-81.

Plaintiff also asserts that Dr. Evans' opinion was consistent with that of a State agency non-examining physician, Dr. Staley, because he opined Plaintiff's myocardial injuries would result in Plaintiff not having "a lot of cardiac reserve." (Dkt. # 16 at 6.) However, as the Commissioner notes, Dr. Staley reported that although Plaintiff would lack a lot of cardiac reserve as a result of his myocardial injuries, he found that it "symptomatically appears that claimant reports more symptoms related to spine than to heart." AR at 340. Further, Dr. Staley

opined Plaintiff could perform light work in contrast to Dr. Evans' opinion that he could only perform sedentary work.

Lastly, Plaintiff argues that Dr. Evans' updated assessment from 2017, which was submitted to the Appeals Council and admitted into the record, is consistent with her earlier assessment except that it further limited Plaintiff's ability to work. (Dkt. # 16 at 7 (citing AR at 23-27).) Plaintiff asserts this assessment, which opined Plaintiff limitations existed as far back as April 19, 2013, further erodes the evidentiary support of the ALJ's decision. (*Id.*) Under *Brewes v. Commissioner of Social Security Administration*, evidence considered for the first time by the Appeals Council must be considered by the district court as part of the administrative record when reviewing an ALJ's decision for substantial evidence under sentence four. 682 F.3d 1157, 1163 (9th Cir. 2012). Dr. Evans' 2017 assessment is substantially the same as her earlier opinions, only it opines Plaintiff was even more impaired. This assessment does not change the ALJ's finding that the longitudinal record is inconsistent with the severity of Dr. Evans' opinion regarding Plaintiff's impairments. Therefore, Dr. Evans' updated assessment opining even more severe impairments does not undermine the ALJ's evaluation of Dr. Evans' opinion. Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for assigning Dr. Evans' opinions little weight.

    4.  Peter McGrath, M.D.

In 2015, Plaintiff's cardiology provider, Dr. McGrath, opined that Plaintiff's chronic cardiovascular symptoms would make it difficult for him to function effectively in a competitive work environment. AR at 1465. Dr. McGrath noted that Plaintiff first presented with cardiovascular issues in 2011. *Id.* at 1464. Although Plaintiff experienced symptoms, he was "otherwise stable" until 2014, when he suffered abrupt syncope while hiking. *Id.* Since this

episode, Plaintiff reported no further syncopal episodes and his symptoms have "improved significantly and are now less concerning for him." *Id.*

The ALJ assigned Dr. McGrath's opinion little weight. AR at 78. First, the ALJ found Dr. McGrath's opinion regarding Plaintiff's ability to work in a competitive work environment was reserved for the Commissioner. *Id.* Further, the ALJ found that Dr. McGrath's opinion was inconsistent with the record, which does not document lasting functional abnormalities which would limit Plaintiff as severely as opined. *Id.* The ALJ also found Dr. McGrath opined Plaintiff had significantly improved, and there were not functional abnormalities during his examination of Plaintiff. *Id.* 78-79.

Plaintiff argues the ALJ erred in finding Dr. McGrath's opinion was inconsistent with the medical record because his opinion was only inconsistent with the State agency non-examining consultants' opinions. (Dkt. # 16 at 7.) As discussed above, the ALJ reasonably assigned the State agency non-examining consultants' opinions great weight and therefore the inconsistency of Dr. McGrath's opinion with these opinions supports the ALJ's evaluation of the evidence. Further, Plaintiff's implication that Dr. McGrath's opinion was consistent with Dr. Evans' opinion and Mr. Malijan's opinion is unpersuasive in establishing any harmful error as the ALJ properly discounted these opinions. Therefore, any consistency with properly discounted opinions does not undermine the ALJ's evaluation of the evidence.

Plaintiff also argues that the ALJ could not disregard Dr. McGrath's opinion simply because it addressed an issue reserved to the Commissioner. (Dkt. # 16 at 8.) However, Plaintiff's ability to work is in fact an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ's comment therefore does not constitute error. Further, the

ALJ did not discount Dr. McGrath's opinion solely on this basis. As discussed above, the ALJ provided other specific and legitimate reasons for discounting his opinion.

Plaintiff also asserts the ALJ had a duty to recontact Dr. McGrath to clarify his opinion, citing to SSR 96-5p (rescinded March 27, 2017), which pertains to the ALJ's obligation to recontact a treating source "if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record." Here, however, the bases for Dr. McGrath's opinions were clear. He opined Plaintiff would be unable to work based on his chronic cardiovascular problems. As discussed above, the ALJ discounted this opinion because it was inconsistent with the record. There is no indication that the ALJ was uncertain of the basis for Dr. McGrath's opinion or otherwise found the record ambiguous. Thus, the ALJ was not required by SSR 96-5p to recontact Dr. McGrath. Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial evidence, for assigning Dr. McGrath's opinions little weight.

### 5. *Edwin Malijan, R.P.T.*

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Mr. Malijan, Plaintiff's physical therapist, provided a letter in 2016 that opined Plaintiff's capabilities were limited to a sedentary level and that he was unable to return to any type of work. AR at 1487. Mr. Malijan also provided a spinal impairment questionnaire in 2016 that

opined, *inter alia*, Plaintiff could perform less than an hour of work in a seated position or in a standing/walking position in an eight-hour workday, would need to be absent from work more than three times in a month, and would need frequent unscheduled breaks in an eight-hour work day. *Id.* at 1520-25.

The ALJ assigned Mr. Malijan's opinion little weight. AR at 78. Similar to the ALJ's evaluation of Drs. Evans and McGrath's opinions, the ALJ found Mr. Malijan's opinion was inconsistent with the record as discussed earlier in the ALJ's decision. *Id.* The ALJ also noted Mr. Malijan is not an acceptable medical source, which supported assigning his opinion lesser weight. *Id.*

Plaintiff concedes that Mr. Malijan is not an acceptable medical source, but argues the ALJ's reasons for discounting his opinion, *i.e.* that it is inconsistent with the record, was not a reasonable interpretation of the record. (Dkt. # 16 at 10.) As discussed above, the ALJ reasonably found that an opinion such as Mr. Malijan, finding Plaintiff so severely limited, is inconsistent with the record that did not document lasting functional abnormalities that would be expected if Plaintiff were in fact that limited. While Plaintiff proposes an alternative interpretation of the record, the Court declines to reweigh the evidence or substitute its judgment for that of the Commissioner. *Thomas*, 278 F.3d at 954. Accordingly, the ALJ provided germane reasons for discounting Mr. Malijan's opinion.

### B. The ALJ Did Not Err in the RFC Assessment

#### 1. Legal Standards

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR

96-8p at 1. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., side effects of medication); reports of daily activities; lay activities; recorded observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from work attempts; need for structured living environment; and work evaluations. SSR 96-8p.

2. *Mental Functioning*[4]

Plaintiff argues the ALJ's analysis regarding Plaintiff's psychological functioning in the RFC is unclear. (Dkt. # 16 a 12.) Plaintiff points to the ALJ's assignment of little weight to the opinion of Dr. Wingerson, Plaintiff's treating psychiatrist, and some weight to the opinion of the State agency non-examining psychological consultants. (*Id.*) Dr. Wingerson opined that Plaintiff would be unable to sustain fulltime competitive work (AR at 1129-30) and the State agency non-examining psychological consultants opined Plaintiff would have moderate limitations interacting with the public and would have some difficulty in sustaining concentration persistence and pace (*id.* at 325-26).

The ALJ's analysis is not unclear. The ALJ found no showing of any noteworthy mental abnormalities in Plaintiff's treatment notes or upon mental status examinations. AR at 77 (citing *id.* at 802, 833-34, 863, 866-68, 1321-22, 1384, 1408, 1444, 1474, 1531-32). The ALJ referenced this finding when assigning only some weight to the State agency non-examining psychological consultants' opinions and when assigning little weight to Dr. Wingerson's opinion. *Id.* at 78. The

---

[4] Plaintiff also asserts the RFC fails to properly reject or include the physical limitations assessed by Plaintiff's treating providers. (Dkt. # 16 at 11.) As discussed above, the ALJ properly discounted the opinions of Plaintiff's treating providers and therefore Plaintiff's argument is based on assignments of error that the Court has rejected.

ORDER - 13

ALJ's decision also notes that while Plaintiff had mild limitations with interacting with others, he was able to spend time with others and had no trouble with authority figures. *Id.* at 71. Further, the ALJ found the record did not indicate Plaintiff had conflicts with his medical providers or that he had substantial communicative issues or anti-social behavior. *Id.* Therefore, the ALJ's analysis regarding Plaintiff's psychological functioning in the RFC is clear.

Plaintiff also asserts the ALJ's findings are contradicted by Mr. Malijan's observations of Plaintiff's anger issues and Plaintiff's testimony regarding his reaction to seeing stories concerning child abuse. (Dkt. # 16 at 12.) As discussed above, the ALJ reasonably discounted Mr. Malijan's opinion. The ALJ also discounted Plaintiff's testimony, a finding Plaintiff did not challenge.

### 3. *"Low Stress Environment" and "Variable Pace"*

Plaintiff also takes issue with the ALJ's finding that Plaintiff would need a "low stress environment defined as occasional changes in the workplace setting." (Dkt. # 16 at 12-13.) Plaintiff asserts that the ALJ's definition has no medical support, and that because the State agency non-examining psychologist did not provide a definition for "low stress environment," the ALJ erred in providing a "lay extrapolation" of functional ability. (*Id.*)

Despite Plaintiff's assertion that there is no medical support for the ALJ's use of the term "low stress environment," "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue,* 682 F.3d 1285, 1288 (10th Cir. 2012). Indeed, the "final responsibility" for decisions such as the assessment of an individual's RFC is reserved to the Commissioner. SSR 96–5p. Plaintiff further argues that because SSR 85-15 provides that people have individualized responses to stress, it is unclear if the ALJ's definition of "low stress environment"

accommodated Plaintiff's individualized threshold to work place stress. (Dkt. # 16 at 13 (citing to SSR 85-15, 1985 WL 56857 at *6 (1985).) However, SSR 85-15 also states that it "is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an individualized basis." SSR 85-15, 1985 WL 56857 at *6 (1985). Here, the ALJ reviewed the record as a whole, obtained VE testimony regarding which jobs would meet the RFC's low stress environment requirement, and rationally found that there were jobs in the national economy that Plaintiff could have performed. Because the ALJ's interpretation is rational, it must be upheld. *Burch*, 400 F.3d at 680-81.

Plaintiff also asserts the ALJ erred in finding Plaintiff would need "work that allows for a variable pace" because he did not provide specifics of what this means in an eight-hour workday, five-day workweek. (Dkt. # 16 at 13-14.) Plaintiff asserts it therefore would be difficult to discern how such a limitation would impact the available occupations. (*Id*. at 13.) Although Plaintiff argues the ALJ did not provide enough specifics regarding this term, Plaintiff merely proposes that there are different interpretations of "variable pace." The ALJ and the VE determined that this limitation would require a job that did not have to be performed at a constant pace, such as an assembly line position. AR at 268. The VE used that parameter to identify jobs which occupations an individual with Plaintiff's RFC could perform, which the ALJ reasonably relied on. Because the ALJ's interpretation is rational, it must be upheld. *Burch*, 400 F.3d at 680-81.

    4. *Res judicata*

Lastly, the parties dispute the role of *res judicata* in this matter. The Commissioner argues the presumption of continuing nondisability applies in this matter based on the previous ALJ's finding of nondisability, and asserts the ALJ's adoption of the previous RFC was proper.

(Dkt. # 17 at 14.) Plaintiff argues the presumption of nondisability was rebutted, which required the ALJ to adopt certain findings from the previous decision unless new and material evidence was presented. (Dkt. 18 at 5 (citing, *inter alia*, *Chavez*, 844 F.2d at 694).)

Under *res judicata*, an ALJ's finding that a claimant is not disabled "create[s] a presumption that [the claimant] continued to be able to work after that date." *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). However, the presumption does not apply if there are "changed circumstances." *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). "Changed circumstances" include such differences as an increase in the severity of impairment, a change in age category, or the existence of a new impairment. *Id.*; *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1988).

In the first decision, the ALJ found Plaintiff had the following severe impairments: coronary artery disease; left ventricular thrombosis; inguinal hernia; status post apical myocardial infarction with Dressler's syndrome and pericarditis; alcohol dependence; cocaine use disorder; depressive disorder NOS; post-traumatic stress disorder; mild degenerative disc disease of lumbar spine. AR at 280. In the second decision, the ALJ noted the first ALJ decision created a presumption of continuing nondisability, but found changed circumstances rebutted the presumption. *Id.* at 70. The ALJ found Plaintiff had the following severe impairments: coronary artery disease, left ventricular thrombosis, degenerative disc disease, depression, anxiety, and substance abuse.

Plaintiff asserts that because the ALJ adopted the RFC finding from the previous decision, the ALJ was required to explain what new and material evidence led him to reject the prior ALJ's findings regarding Plaintiff's severe impairments. (*Id.*) Plaintiff asserts this constituted harmful error because had the ALJ applied *res judicata* to the prior ALJ's severe

impairment findings, the ALJ would have "had" to include limitations in the RFC assessment regarding Plaintiff's inguinal hernia, status post myocardial infraction with Dressler's syndrome and pericarditis, alcohol dependence, and cocaine use disorder. (*Id.*)

Although Plaintiff asserts the ALJ would have "had" to include limitations regarding the additional severe limitations found by the previous ALJ, Plaintiff does not identifiy any specific limitations. Here, the ALJ adopted the RFC assessment from the previous ALJ, who made the RFC determination after finding Plaintiff's inguinal hernia, status post myocardial infraction with Dressler's syndrome and pericarditis, alcohol dependence, and cocaine use disorder to be severe impairments. Therefore, even if the ALJ had found Plaintiff's additional impairments severe, the RFC assessment would have been the same. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). Accordingly, any error in not adopting the previous ALJ's step-two findings regarding Plaintiff's severe impairments is harmless, and the ALJ did not err in assessing Plaintiff's RFC determination.

### C. The ALJ Did Not Err in Replying on the VE's Testimony

At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). In determining whether a claimant is disabled, an ALJ may consult various sources, including the DOT and a VE. *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017).

"Presumably, the opinion of the VE would comport with the DOT's guidance." If, however, the VE's opinion that the claimant can work "conflicts with, or seems to conflict with, the requirements listed in the [DOT]," the ALJ has an obligation to ask the VE to reconcile the

conflict before relying on the VE's testimony. *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (2000)); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The ALJ's obligation to reconcile a conflict is triggered only where the conflict is "obvious or apparent." *Gutierrez*, 844 F.3d at 808. To be an obvious or apparent conflict, the VE's testimony "must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Id.*

In this case, the ALJ asked the VE to consider a hypothetical individual who, in relevant part, would need to work "in a low stress environment" and that "would allow for a variable pace." AR at 268. The VE testified the hypothetical individual could perform the jobs of marker[5], bottle packer, and cafeteria attendant. *Id.* at 269. The VE also testified that even if the hypothetical individual was further limited to occasional performing all postural and given a sit-stand option, that individual could perform the jobs of cashier II and rental clerk. *Id.* The ALJ did not ask the VE whether her testimony was consistent with the DOT. In his decision, the ALJ relied on the VE's testimony and found Plaintiff was not disabled at any time through his date last insured, June 30, 2014, but that he was disabled in February 2015 after turning 55 which changed his age category. AR at 80-82.

Plaintiff argues the ALJ erred in relying on the VE's testimony because he did not affirmatively ask the VE if the evidence provided was consistent with the DOT. (Dkt. # 16 at 14-17.) Plaintiff asserts that this alleged error was harmful because neither the ALJ nor the VE understood what the term "variable pace" meant, or if that term was consistent with the descriptions of the jobs contained in the DOT. (*Id.* at 16.) Plaintiff also asserts that the VE did

---

[5] The ALJ identifies this job as "monitor" in his decision, however, the VE testified that it was "marker."

ORDER - 18

not confirm that the term "low stress" is consistent with the DOT descriptions of the jobs identified. (*Id.*)

The Commissioner appears to concede that the ALJ failed to affirmatively ask the VE whether there was a conflict with the DOT, but argues this error was harmless because there is no apparent conflict between the VE's testimony and the DOT. (Dkt. # 17 at 16.) The Commissioner asserts that the ALJ and VE discussed the meaning of "variable pace" and concluded it was something that did not require a constant pace, such as an assembly line position. (Dkt. # 17 at 16 (citing AR at 268).) The Commissioner also asserts that the VE proposed the job of carwash attendant, but testified that she was not sure it was a "low stress" job, and the ALJ therefore did not include carwash attendant in his decision. (*Id.* (citing AR at 80-81, 296).)

The Court finds the Commissioner's argument persuasive. Although Plaintiff asserts there is no testimony confirming that these terms are consistent with the DOT job descriptions, Plaintiff does not identify anything within the DOT job descriptions that indicates any conflict. Hence, because there was no conflict for the ALJ to reconcile, Plaintiff has not shown the ALJ committed harmful error. *See Massachi*, 486 F.3d at 1154 n.19 (an ALJ's failure to ask the VE to reconcile a purported conflict between her testimony and the DOT is harmless where there is no conflict); *see also Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] 'substantial rights.'").

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 6th day of January, 2020.

*[signature: MJPeterson]*
MICHELLE L. PETERSON
United States Magistrate Judge